UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

IN RE: Request from the United Kingdom         )
      Pursuant to the Treaty Between the         )
      Government of the United States of         )   Under Seal
      America and the Government of the         )   Case No: _____
      United Kingdom on Mutual         )
      Assistance in Criminal Matters in the )
      Matter of Russell John Knaggs, et al. )

APPLICATION FOR ORDER PURSUANT TO THE TREATY
ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS
AND TITLE 18, UNITED STATES CODE, SECTION 3512

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER

The United States is seeking an order appointing a person as a commissioner to collect evidence requested by the United Kingdom in its attached treaty request (the "Request") made pursuant to *The Treaty with the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters*, signed January 6, 1994, and *The Instrument as Contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union, signed 25 June 2003, as to the Application of the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, Signed 6 January 1994,* signed on December 16, 2004 (hereinafter jointly referred to as the "Treaty"), and to seek other orders, as needed, to execute the Request as authorized by the Treaty and 18 U.S.C. § 3512.

The Central Authority for the United Kingdom (the Home Office, Judicial Cooperation Unit) pursuant to the Treaty, makes this Request in connection with a criminal prosecution and proceedings related to the prosecution**.** Specifically, the Crown Prosecution Service, Organised Crime Division, previously prosecuted defendants Russell John Knaggs, Philip William Hadley,

1

Robert Rich ("the Defendants") with offenses related to the importation of cocaine into England and Wales from Colombia. On February 20, 2012, following a trial in Birmingham Crown Court, the Defendants were convicted of conspiring to contravene Section 170 of the United Kingdom's Customs and Excise Act of 1979, contrary to Section 1(1) of the Criminal Law 1979 (concerning the importation of a Class A drug, to wit, cocaine). During the prosecution of the Defendants the prosecution adduced evidence supplied by the Government of the United States in response to previous mutual legal assistance requests sent by the Government of the United Kingdom. This evidence included copies of the Yahoo! email accounts slimjim25@ymail.com and/or rob.rich@ymail.com. On March 2, 2012, the Defendants were sentenced to 20, 18, and 14 years imprisonment, respectively.

The Defendants have appealed their conviction, and a hearing on their appeal will be held in the Court of Appeal on **May 23, 2014**. In their appeal, the Defendants challenge the legality of the manner in which the evidence supplied by the United States Government in response to the previous mutual legal assistance requests was obtained. Specifically, the Defendants allege that the evidence was not simply produced by Yahoo! in response to a search warrant, but instead was collected through some sort of ongoing monitoring and interception as part of the "secret world wide surveillance programme called 'Prism.'" In support of their appeal, the Defendants submitted several reports of experts to the Court of Appeals.

In order to prove that the Defendants' allegations are false, the United Kingdom now seeks a full and complete explanation from Yahoo! describing how they obtained and provided the records admitted in the Defendants' Trial. The assistance requested by the United Kingdom must be provided as soon as possible in light of the upcoming hearing in the Defendants' appeal. Specifically, the United Kingdom requests the following:

**ENQUIRIES TO BE MADE**

1. After obtaining any appropriate subpoena, search warrant, court order or other order, to obtain a witness statement in writing from an officer of Yahoo! Inc., 701 First Avenue, Sunnyvale, California 94089

a. To confirm that the material produced by that company in response to the Letters of Request issued in this case was material held by Yahoo! in response to the Preservation Order obtained.
b. To confirm that the material supplied was not the product of any continuous interception by any security service or other body.
c. To supply an explanation of the way in which draft emails are saved on the Yahoo! system and why it is saved as a series of "snapshots"
d. To comment on the assertions in the appended reports and, in particular, to respond to any statements which the officer believes are inaccurate or misleading.

2. That such other enquiries are made, persons interviewed and exhibits secured as appear to be necessary in the course of the investigation.

3. That an indication be obtained of the willingness of any witness to travel to the United Kingdom to give evidence in person.

4. That any information held on computer in any form be preserved and secured from unauthorized interference and made available to the investigating officers and the Crown Prosecution Service for use in any hearing before an Appellate Court in England and Wales or at any subsequent retrial.

Federal courts, pursuant to the Treaty, statute and their inherent authority, may issue orders as may be necessary for the production of the evidence requested by the United Kingdom including orders appointing a person as a commissioner to gather such evidence and establishing the procedures for the production of such evidence.

A. <u>Authority to Execute the Request</u>

1. <u>The Treaty</u>

A treaty constitutes the law of the land. U.S. Const. art. VI. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. <u>Asakura v. City of Seattle, Washington</u>, 265 U.S. 332, 341 (1924); <u>United States v. The Peggy</u>, 5 U.S. 103 (1801); <u>In re Commissioner's Subpoenas</u>, 325 F.3d 1287, 1291 (11th Cir. 2003). To the extent that the

provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig, et al. v. Miller, Administrator, et al., 389 U.S. 429, 440-441 (1968); In re Commissioner's Subpoenas, 325 F.3d 1287, 1305-1306 (11th Cir. 2003); United States v. Erato, 2 F.3d 11, 15-16 (2d Cir. 1993).

The United States and the United Kingdom entered into the Treaty in order to improve the effectiveness of the law enforcement authorities of both countries to investigate and prosecute crimes - particularly drug trafficking offenses. See Preamble to the Treaty. In accordance with the provisions of the Treaty, each state is obliged to provide assistance to the other in the investigation of crimes by, among other things, taking the testimony and statements of persons, and by providing copies of requested records, documents and evidence. The Treaty, Art. 2; In re Commissioner's Subpoenas, 325 F.3d 1287, 1290 (11th Cir. 2003). Each state contemplated that it would provide the other with assistance generally comparable to that which is available to its own law enforcement authorities, which assistance includes taking testimony or statements of persons, providing documents and other evidence, and immobilizing criminally-obtained assets. The Treaty, Art. 2; Barr v. U. S. Department of Justice, 645 F. Supp. 235, 237 (E.D.N.Y. 1986), aff'd, 819 F.2d 25 (2d Cir. 1987).

The Treaty and 18 U.S.C. § 3512 empower federal courts to execute treaty requests in order to comply with the United States' treaty obligations. Article 5 of the Treaty provides that: "the Requested Party shall take whatever steps it deems necessary to give effect to requests received from the Requesting Party," and that "[t]he courts of the Requested Party shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request." Thus, the Treaty contemplates that federal courts will use compulsory measures to execute such requests. The Treaty, Art. 5. Moreover, Article 8 of the Treaty provides:

4

> Taking Testimony and Producing Evidence in the
> Territory of the Requested Party
>
> 1.   A person in the territory of the Requested Party from whom evidence is requested pursuant to this Treaty may be compelled, if necessary, to appear in order to testify or produce documents, records, or articles of evidence by subpoena or such other method as may be permitted under the law of the Requested Party.
>
> 2.   A person requested to testify or to produce documentary information or articles in the territory of the Requested Party may be compelled to do so in accordance with the requirements of the law of the Requested Party. If such a person asserts a claim of immunity, incapacity or privilege under the laws of the Requesting Party, the evidence shall nonetheless be taken and the claim be made known to the Requesting Party for resolution by the authorities of that Party.
>
> 3.   Upon request, the Central Authority of the Requested Party shall furnish information in advance about the date and place of the taking of the evidence pursuant to this Article.
>
> 4.   The Requested Party shall allow persons specified in the request to ask questions of the person whose testimony or evidence is being taken, through a legal representative qualified to appear before the courts of the Requested Party.
>
> 5.   Documentary information produced pursuant to this Article may be authenticated by the attestation of a person competent to do so in the form indicated in Appendix A to this Treaty. No further authentication or certification shall be necessary in order for such documentary information to be admissible in evidence in proceedings in the territory of the Requesting Party. Documentary information produced pursuant to this Article may also be authenticated pursuant to such other form or manner as may be prescribed from time to time by either Central Authority.

The Treaty, Art. 8.

      The Treaty imposes no dual criminality requirement as a precondition for providing assistance. Consequently, each state party is obligated to provide assistance without regard to whether the conduct under investigation or prosecution would constitute an offense under the laws of the Requested State, except as otherwise provided by U.S. law. See *Message from the President of the United States Transmitting the Treaty between the Government of the United*

5

*States of America and the Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, Signed at Washington on January 6, 1994, Together with a Related Exchange of Notes Signed on the Same Date.*

     2.    <u>Statutory Authority Grounding Execution of Requests for Assistance</u>

The Treaty is designed to be self-executing and requires no implementing legislation. <u>Id.</u>; <u>In re Commissioner's Subpoenas</u>, 325 F.3d 1287, 1291 (11th Cir. 2003). However, because the procedural provisions in many treaties are minimal, in the past federal courts routinely utilized procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute treaty requests from foreign authorities. <u>In re Commissioner's Subpoenas</u>, 325 F.3d 1287, 1305-1306 (11th Cir. 2003). Substantive U.S. law regarding searches, seizures and other compulsory processes further grounded the execution of such assistance requests.

On October 19, 2009, the President signed the Foreign Evidence Request Efficiency Act of 2009 (Public Law 111-79), enacting 18 U.S.C. § 3512, the full text of which is attached for the convenience of this Court. Section 3512 explicitly authorizes a federal court to:

> issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

Section 3512 directly empowers the federal courts to execute such requests and separately codifies under Title 18 the longstanding practice and procedures employed by the United States and the federal courts to execute requests by foreign authorities for assistance to the fullest extent possible under U.S. law. Congress enacted Section 3512 to make it "easier for the United States to respond to these requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 CONG. REC. S6,810 (2009) (Statement of Sen. Whitehouse).

B. <u>Execution of Foreign Requests for Assistance Under the Treaty and Section 3512.</u>

1. <u>Authorization of the Application to This Court</u>

Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation and prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing and restitution.

For purposes of Section 3512, an application is "duly authorized by an appropriate official of the Department of Justice" when the Department of Justice, Criminal Division, Office of International Affairs, has reviewed and authorized the request and is executing the request itself or has delegated the execution to another attorney for the government. In this matter, such authorization and delegation is evidenced by a letter dated April 22, 2014, from the Department of Justice, Criminal Division, Office of International Affairs, received by the Computer Crime & Intellectual Property Section of the Criminal Division, United States Department of Justice, transmitting the Request to this office for execution.

Section 3512(c) authorizes filing the instant application in the District of Columbia.

2. <u>Foreign Authority Seeking Assistance Within Section 3512 and the Treaty.</u>

As to the "foreign authority" making the Request, Section 3512(h) provides:

> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

In this matter the Home Office, Judicial Cooperation Unit, of the United Kingdom is the designated Central Authority in the United Kingdom for requests made pursuant to the Treaty.

7

As evidenced by the Request itself and confirmed in the authorization process and again by the undersigned, consistent with Section 3512(a)(1), the foreign authority seeks assistance in the investigation or prosecution of criminal offenses or in proceedings related to the prosecution of criminal offenses.

3. <u>Authority of the Federal Courts Under Section 3512.</u>

When enacting Section 3512, Congress intended that federal courts facilitate to the fullest extent possible the execution of requests by foreign authorities for assistance in criminal matters and endeavored to streamline and expedite the execution of such requests. Section 3512 authorizes federal courts to issue "such orders as may be necessary to execute a request" and specifically includes: orders for search warrants pursuant to Federal Rule of Criminal Procedure 41; orders for stored wire or electronic communications and related evidence under 18 U.S.C. § 2703; orders for pen registers and trap and trace devices under 18 U.S.C. § 3123; orders for the provision of testimony or a statement or the production of documents or other things, or both; and orders appointing "a person" to direct the taking of testimony or statements or the production of documents or other things, or both. 18 U.S.C. § 3512(a)(1), (2).

The assistance requested by the United Kingdom pursuant to the Treaty by its Crown Prosecution Service in the instant Request falls squarely within that contemplated by both the Treaty and Section 3512.

C. <u>Appointment of a Person as Commissioner to Collect Evidence</u>

1. <u>Statutory Authorization</u>.

Section 3512(b) provides that a federal judge may "issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or

both." The statute further authorizes the person appointed to issue orders requiring the appearance of a person, or the production of documents or other things, or both; administer any necessary oath; and take testimony or statements and receive documents or other things.

Commensurate with past practice under 28 U.S.C. § 1782, it is anticipated that a federal court would appoint an attorney for the government, typically a federal prosecutor, as "commissioner."

### 2. Procedures for Evidence Collection

Section 3512 (a) specifically empowers a federal judge to issue "such orders as may be necessary" to execute the request. This authorization encompasses orders specifying the procedures to be used to collect particular evidence, including procedures requested by the foreign authority to facilitate its later use of the evidence. In executing a request made pursuant to a treaty, a court has the obligation to prescribe effective and expeditious procedures designed to promote the purpose of the treaty. See In re Commissioner's Subpoenas, 325 F.3d 1287, 1305 (11th Cir. 2003). Nothing in Section 3512 suggests any limitation on a court's power to exercise "complete discretion in prescribing the procedure to be followed" as was available under 28 U.S.C. § 1782. In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989), citing 1964 U.S.C.C.A.N. at 3789. See White v. National Football League, et al., 41 F.3d 402, 409 (8th Cir. 1994), cert. denied, 515 U.S. 1137 (1995) (a court may issue whatever process it deems necessary to facilitate disposition of a matter before it); FED.R.CRIM.P. 57(b).

#### a. Procedures Authorized by Other Statutes.

In addition, Section 3512 references specific U.S. laws for obtaining certain evidence and, by doing so, adopts any statutorily mandated procedures in relation to obtaining orders for

9

search warrants; orders for contents of stored wire or electronic communications or for records related thereto; and orders for a pen register or a trap and trace device.

      b.  <u>Orders by the Person Appointed; Commissioner Subpoenas</u>

Section 3512 authorizes the "person" appointed (here, and in past practice under 28 U.S.C. § 1782, the "commissioner") to issue orders "requiring the appearance of a person, or the production of documents or other things or both." Further, as described above, Articles 5 and 8 of the Treaty provide for the issuance of procedural documents, such as subpoenas, to gather evidence.

If a federal district court so orders, the commissioner may use the attached form, still entitled "commissioner's subpoena," to obtain the requested evidence. See <u>In re: Commissioner's Subpoenas</u>, 325 F.3d 1287, 1291 (2d Cir. 1993) (incorporating in pertinent part a district court's order directing use of commissioner's subpoenas); <u>United States v. Erato</u>, 2 F.3d 11, 13-14 (2d Cir. 1993) (same). This commissioner's subpoena is simply a version of the "order" to be issued by the person appointed by the court under Section 3512 to direct the production of evidence. Section 3512 expressly authorizes the service and enforcement of such orders, or commissioner's subpoenas, anywhere in the United States (i.e., coextensive with the service of subpoenas in U.S. criminal investigations and prosecutions).

  c.  <u>Notice of Evidence Taking</u>

As an initial matter, this application is being made <u>ex parte</u>, consistent with U.S. practice in its domestic criminal matters and its prior practice on behalf of foreign authorities under 28 U.S.C. § 1782. <u>In re Letter of Request from the Crown Prosecution Service of the United Kingdom</u>, 870 F.2d 686, 688 (D.C. Cir. 1989); <u>In re Letters Rogatory from the Tokyo District,</u>

10

Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).  The Treaty itself contemplates the need for confidentiality with respect to all aspects of the execution of requests.  See The Treaty, Art. 7.

Both Section 3512 and the Treaty at Article 8 authorize use of compulsory process in the execution of treaty requests comparable or similar to that used in domestic criminal investigations or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any party other than the recipients (i.e., no notice to targets or defendants), orders and commissioner's subpoenas issued in execution of treaty requests pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  In the absence of a specific request to provide notice, a district court and U.S. authorities can assume that a requesting foreign authority has provided such notice as the foreign law requires, or that foreign law does not require notice and the requesting foreign authority does not consider notice to be necessary or useful.  Accordingly, a federal district court should authorize a commissioner to collect the evidence requested without notice to any party other than the recipient of the commissioner's subpoena except to the extent that a request asks for specific notice procedures.

    d.  Right to Financial Privacy Act

The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., does not apply to execution of foreign legal assistance requests.  Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987); In re Letters of Request from the Supreme Court of Hong Kong, 821 F.Supp. 204, 211 (S.D.N.Y. 1993).  Consequently, to the extent that execution of a request entails production of bank or financial records, notice provisions of the Act do not apply, and the commissioner need

11

not give, nor arrange for the custodian of records to give, notice to an account holder. (Note that the Act itself applies only to accounts maintained in a person's name and not to corporate, perhaps even partnership, accounts. United States v. Daccarett, 6 F.3d 37, 50-52 (2d Cir. 1993).)

Conclusion

The instant Request is exactly the type of request contemplated for execution under Section 3512. In its sequential legislative efforts relevant to the provision of assistance to foreign authorities, Congress has intended that the United States set an example to other nations by making judicial assistance generously available. See, e.g. In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1153-1154 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989). Section 3512 enables the United States to respond "more quickly . . . to foreign evidence requests. These efforts will assist [the United States] with [its] investigations as foreign authorities will be urged to respond in kind to our evidence requests in a speedy manner." 155 CONG. REC. H10,093 (2009)(Statement of Rep. Schiff).

Accordingly, to execute this Request, the Government moves this Court to issue the attached order pursuant to the Treaty and 18 U.S.C. § 3512 appointing the undersigned Trial Attorney as commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, to obtain the evidence requested, to adopt such procedures in receipt of the evidence as are consistent with the intended use thereof.

Respectfully submitted,

JOHN T. LYNCH, JR.
Chief
Computer Crime & Intellectual Property Section
United States Department of Justice

By: *[signature]*
Gavin A. Corn
Trial Attorney
Computer Crime & Intellectual Property Section
United States Department of Justice
1301 New York Avenue, Suite 600
Washington, D.C. 20530
Phone: (202) 353-9076
Email: Gavin.Corn2@usdoj.gov